# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHEDRICK BOWES-NORTHERN | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 cv 3351 |
| | ) | |
| v. | ) | Judge Chargles R. Norgle, Sr. |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF CHICAGO'S 12(B)(6) MOTION TO DISMISS COUNTS III AND V OF PLAINTIFF'S COMPLAINT

## PRELIMINARY STATEMENT

Despite Defendant City of Chicago's mischaracterizations of Plaintiff Shedrick Bowes-Northern's ("**Plaintiff**") claims, Plaintiff has alleged enough facts in his Amended Complaint to bring a claim for municipal liability against the City of Chicago for its role in the conspiracy that deprived Plaintiff of his constitutional right to be free from excessive force. *See* Def. City of Chi.'s Mot. to Dismiss Counts III and V of Pl.'s Compl., ECF No. 62 ("**Mot. to Dismiss**"); Am. Compl., ECF No. 50. Additionally, Plaintiff's *respondeat superior* claim is viable because Defendant Officers are potentially individually liable for their willful and wanton conduct during Plaintiff's arrest, which exacerbated his medical condition. *Id.* Plaintiff should be permitted the opportunity to obtain discovery on these claims. Accordingly, the Court should deny Defendant City of Chicago's 12(B)(6) Motion to Dismiss Counts III and V of Plaintiff's Complaint.

## RELEVANT FACTS

On or around September 21, 2020, Plaintiff, a resident of the State of Indiana, dropped off his daughter's kidney medication with Sydney Scott ("**Ms. Scott**"), his daughter's mother, at 11839 South State Street, Chicago, Illinois. Am. Compl. ¶¶ 3, 9, ECF No. 50. After dropping off the medication, Stephen Smith ("**Mr. Smith**"), an acquaintance of Scott and against whom Plaintiff had an order of protection, confronted, assaulted, and battered Plaintiff. Am. Compl. ¶¶ 10, 11. Mr. Smith verbally accosted and physically battered Plaintiff before Plaintiff retreated to his own vehicle and called the Chicago Police Department ("**CPD**"). Am. Compl. ¶¶ 12-14.

When calling the CPD, Plaintiff informed the dispatcher that he had been assaulted and battered by Mr. Smith and that he feared Mr. Smith's intentions with respect to his safety. Am. Compl. ¶ 15. Plaintiff made sure to inform the dispatcher that he had an Indiana License to Carry

and that he had a firearm in his car, explaining that he wanted the responding CPD Officers to be aware that he had a firearm in his car. Am. Compl. ¶¶ 16, 17.

In response to Plaintiff's call to the CPD, Defendant Officers Gordils, Smith, and Quiroz, arrived on scene. Am. Compl. ¶¶ 7, 18. At all times relevant to the Amended Complaint, Defendant Officers Gordils, Smith, and Quiroz were employed by Defendant City of Chicago and acted on behalf of the City of Chicago and/or the CPD under the color of state law, ordinance, and/or regulation, statutes, custom and usages of the City of Chicago and/or Chicago Police Department. Am. Compl. ¶¶ 4, 6, 8, 79, 80.

Defendant Officers were aware of Plaintiff's conversation with the dispatcher at or before the time they arrived on scene. Am. Compl. ¶ 19. When Defendant Officers Gordils, Smith, and Quiroz arrived, Plaintiff was outside of his vehicle. Am. Compl. ¶ 20. Plaintiff immediately informed the Defendant Officers that Mr. Smith had physically struck him. Am. Compl. ¶ 21. After briefly speaking with Plaintiff, the Defendant Officers spoke with Mr. Smith who pressed charges against Plaintiff after Defendant Officers' repeated suggestions to do so. Am. Compl. ¶¶ 24-28.

When Defendant Officer Gordils returned from speaking with Mr. Smith, he advised Plaintiff that he was going to place Plaintiff under arrest because he did not believe Plaintiff. Am. Compl. ¶ 29. Despite not posing any threat to any of the Defendant Officers, and not resisting, attacking, or making any verbal or physical threats to the Defendant Officers in any way, Defendant Officer Gordils placed restraints on Plaintiff that were too tight. Am. Compl. ¶¶ 22, 23, 30. Plaintiff remained handcuffed with these tight restraints for the remainder of the time he was at 11839 South State Street as well as while being transported to the police station, held

in a waiting area, interrogated, transported for medical care, and returned to the police station. Am. Compl. ¶ 31.

At some point thereafter, Defendant Officers Drew and Pierce arrived at 11839 South State Street. Am. Compl. ¶ 32. Defendant Officers Drew and Pierce were employed by Defendant City of Chicago and acted on behalf of the City of Chicago and/or the CPD under the color of state law, ordinance, and/or regulation, statutes, custom and usages of the City of Chicago and/or Chicago Police Department. Am. Compl. ¶¶ 4, 6, 8, 79, 80.

Once Mr. Smith signed the criminal complaint, Officer Gordils informed Plaintiff that he was being arrested because Mr. Smith claimed that Plaintiff pointed a gun at him. Am. Compl. ¶ 35. Defendant Officer Gordils and other Defendant Officers began to place Plaintiff in a police car, at which time Plaintiff informed Defendant Officers that he could not breathe, and that he has diabetes. Am. Compl. ¶¶ 36, 37. Despite Plaintiff alerting them of his medical condition, the Defendant Officers did not check Plaintiff's condition, including failing to check whether the restraints placed on Plaintiff were unnecessarily tight. Am. Compl. ¶ 38.

On the way to the police station, Plaintiff again informed Defendant Officers Pierce and Drew that he had diabetes, high blood pressure, and was experiencing hot flashes. Am. Compl. ¶ 39. Defendant Officers Pierce and Drew rolled the squad car window down, but did not check Plaintiff's condition, including whether the restraints placed on Plaintiff were unnecessarily tight. Am. Compl. ¶¶ 40, 41.

Upon arrival at the police station, Plaintiff informed Defendant Officer Gordils that his arms were messed up and that the handcuffs were too tight. Am. Compl. ¶ 42. Defendant Officer Gordils did not respond to Plaintiff, and the Defendant Officers did not check Plaintiff's

condition, including whether the restraints placed on Plaintiff were unnecessarily tight. Am. Compl. ¶¶ 43, 44.

After Plaintiff's arrest and arrival to the police station, Defendant Officers tightly handcuffed Plaintiff's ankles. Am. Compl. ¶¶ 45, 46. Plaintiff informed the Defendant Officers that the restraints were too tight, causing pain and discomfort in his wrists, arms, shoulders, and feet, including causing his feet to swell. Am. Compl. ¶ 47. Plaintiff requested the restraints to be loosened, but Defendant Officers did not loosen the restraints nor check Plaintiff's condition. Am. Compl. ¶ 48.

One or more of the Defendant Officers had a reasonable opportunity to prevent excessive force from being used on Plaintiff, but they each failed to do so even though Plaintiff had been and was continuing to fully cooperate with Defendant Officers, including answering their questions. Am. Compl. ¶¶ 49, 50.

As a direct and proximate result of Defendant Officers' actions, Plaintiff suffered physical injury and distress, including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, including a pressure ulcer on his right foot, as well as pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time. Am. Compl. ¶ 57.

Under the color of law, Defendant Officers conspired to cause damage to Plaintiff by (i) using excessive force and/or failing to intervene in the use of excessive force against Plaintiff, (ii) agreeing not to report each other after witnessing and/or using excessive force relative to Plaintiff; and (iii) generating false documentation to cover-up for their own and each other's misconduct. Am. Compl. ¶¶ 6, 8, 64a-c. The Defendant Officers specifically engaged in

communication on or about September 21, 2020 whereby they agreed to facilitate, engage in, and support the conduct above, and as a result of this conspiracy, Defendant Officers proximately caused Plaintiff to, *inter alia*, suffer physical injury, incur financial losses, and suffer emotionally. Am. Compl. ¶¶ 6, 8, 65, 76–77.

## RELEVANT PROCEDURAL HISTORY

On June 11, 2021, Plaintiff file a pro se complaint against David Brown, Chicago Police Superintendent; Civilian Office of Police Accountability; Chicago Police Department; and Lori E Lightfoot, City of Chicago Mayor in the United States District Court for the Northern District of Indiana. Compl., ECF No. 1. The case was transferred to the United States District Court for the Northern District of Illinois on June 21, 2021. Order, ECF No. 3. Plaintiff filed another Amended Complaint against the City of Chicago, County of Cook, several CPD officers, and other defendants, on September 1, 2021.[1] Am. Compl., ECF No. 35. On September 7, 2021, the Court recruited an attorney to represent Plaintiff in accordance with the trial bar's commitment under Local Rule 83.37 (ND.Ill). Order, ECF No. 41.

On November 16, 2021, with the assistance of recruited counsel, Plaintiff filed an Amended Complaint with Jury Demand against the City of Chicago and Defendant Officers, bringing the following counts: Count I - Excessive Force Claim Against All Defendant Officers Pursuant to 42 US.C. § 1983 and the Fourth Amendment to the U.S. Constitution; Count II - Failure To Intervene (Excessive Force) Claim Against All Defendant Officers Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution; Count III - § 1983 Conspiracy Claim Against All Defendants; Count IV - 745 ILCS 10/9-102 Claim Against

---

[1] Plaintiff also filed Amended Complaints on June 29, 2021 and July 13, 2021. Am. Compl., ECF Nos. 6, 23, which were stricken by the Court on August 27, 2021 because Plaintiff had only identified an unsuable party as the Defendant. *See* Order, ECF No. 34.

6

Defendant City of Chicag; and Count V - Supplementary Claim for *Respondeat Superior* Against Defendant City of Chicago. Am. Compl., ECF No 50.

On March 17, 2022, Defendant City of Chicago filed Defendant City of Chicago's 12(B)(6) Motion to Dismiss Counts III and V of Plaintiff's Complaint, ECF No. 62 and Defendant City of Chicago's Answer to Plaintiff's Amended Complaint, Affirmative Defenses, and Jury Demand, ECF No. 64. Defendant Officers also filed their Answer to Plaintiff's Amended Complaint, Jury Demand and Affirmative Defenses, ECF No. 66 on the same day.

After several recruitments and withdrawals of counsel, on April 20, 2022, the Court recruited the undersigned to represent Plaintiff. *See* Civil Docket, *Bowes-Northern v. Chicago Police Department*, No. 21 CV 3351; Minute Entry, ECF No. 78. On May 18, 2022, the Court So Ordered an Agreed Scheduling Order setting the deadline for Plaintiff's response to the Motion to Dismiss to on or before June 10, 2022. Agreed Scheduling Order, ECF No. 83. Because this motion is submitted on June 10, 2022, it is timely.

## ARGUMENT

Defendant City of Chicago has moved to dismiss Counts III and V of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure ("**Fed. R. Civ. P.**") 12(b)(6). *See* Mot. to Dismiss, ECF No. 62. Pursuant to Fed. R. Civ. P. 8(a)(2), a claim for relief need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." As explained below, Plaintiff has met this requirement by alleging "enough facts to state a claim to relief that is plausible on its face" pursuant to 42 U.S.C. § 1983 and *respondeat superior* liability against Defendant City of Chicago. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). To require Plaintiff to plead the additional allegations that Defendant claims are lacking would improperly subject Plaintiff to a "probability requirement" which has been explicitly

rejected by the Supreme Court. *Id.* at 556 (A complaint may be well-pleaded "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks omitted)). Instead, the Court "must construe the allegations in the complaint in the light most favorable to [the Plaintiff], accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the [the Plaintiff]." *Flores v. City of S. Bend*, No. 2:19 Civ. 64, 2020 WL 1234869, at *1 (N.D. Ind. Mar. 13, 2020), *rev'd and remanded*, No. 20-1603, 2021 WL 1903225 (7th Cir. May 12, 2021). Thus, the Court should deny Defendant's motion and allow this matter to proceed to discovery.

I. **The Court Should Deny Defendant City of Chicago's Motion to Dismiss Count III Because Plaintiff Has Adequately Alleged Defendant's Liability for Conspiracy Pursuant to 42 U.S.C. § 1983.**

Pursuant to 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory […], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress […]." 42 U.S.C. § 1983. As recognized by the Supreme Court, § 1983 liability applies to municipalities and local governments. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Defendant City of Chicago's motion to dismiss Plaintiff's Count III should fail because Plaintiff has alleged enough facts to establish liability under § 1983 against the City of Chicago. Specifically, Plaintiff has alleged that the City of Chicago's "law, ordinance, and/or regulation, statutes, custom and usages" authorized the Conspiracy that deprived him of his constitutional rights in violation of the Fourth Amendment and Fourteenth Amendments to the U.S. Constitution. *See* Am. Compl. ¶¶ 6, 8, ECF No. 50.

**A. Plaintiff Has Satisfied the Pleading Requirements for Municipal Liability.**

Under 42 U.S.C. § 1983, a municipality is liable for a "constitutional violation [that] was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021), *cert. denied sub nom. First Midwest Bank v. City of Chicago*, 142 S. Ct. 389 (2021) (citing *Monell*, 436 U.S. at 694). It is well established in the Seventh Circuit that § 1983 claims against municipalities "are not subject to heightened pleading standards." *See Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 878 (N.D. Ill. 2014); *see also Estate of Sims ex rel Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements."). Thus, it is sufficient to allege there is "an express policy that causes a constitutional deprivation when enforced" or "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice." *LaPorta*, 988 F.3d at 986.

The allegations in Plaintiff's Amended Complaint concerning municipal liability satisfy this pleading standard. Plaintiff alleges that at all relevant times to the allegations in his Amended Complaint, Defendant Officers acted on behalf of the City of Chicago, and "under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of the City of Chicago and/or Chicago Police Department." Am. Compl. ¶¶ 6, 8, ECF No. 50. He further alleges that because of Defendant Officers' actions under color of state law, he suffered violations of his Fourth Amendment and Fourteenth Amendment Rights to be free from excessive force. Am. Compl. ¶¶ 46, 49, 51, 64a-c, 66-77, ECF No. 50.

Though Defendant City of Chicago attempts to characterize Plaintiff's claims as seeking § 1983 liability against the City of Chicago because of the "mere" fact of the Defendant Officers' employment, Mot. to Dismiss at 4, ECF No. 62, this is inaccurate. Plaintiff is not seeking to attribute liability to the City of Chicago solely because it employed Defendant Officers when they violated his constitutional rights. Instead, Plaintiff has alleged that it was Defendant City of Chicago's "law, ordinance, and/or regulation, statutes, custom, and usages" that empowered Defendant Officers to violate his constitutional rights. Am. Compl. ¶ 8, ECF No. 50. Because these allegations link a "policy or custom" to the deprivation of Plaintiff's constitutional rights, Plaintiff has sufficiently alleged municipal liability against the City of Chicago pursuant to *Monell*. *See LaPorta*, 988 F.3d at 986.

### B. Plaintiff's Count for Conspiracy Against the City of Chicago Pursuant to § 1983 Should Not Be Dismissed.

Plaintiff's count for conspiracy against the City of Chicago pursuant to § 1983 is supported by the allegations in his Amended Complaint and should not be dismissed. Though "conspiracy is not an independent basis of liability in § 1983 actions," a plaintiff may recover on this theory of liability by alleging an "underlying constitutional violation." *See Armour v. Country Club Hills*, No. 11 Civ. 5029, 2014 WL 63850, at *3 (N.D. Ill. Jan. 8, 2014) (quoting *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)). There are no heightened pleading standards for conspiracy claims in the Seventh Circuit. *See Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1078 (N.D. Ill. 2014). Accordingly, a plaintiff may proceed with a § 1983 conspiracy claim where the allegations "indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Id.* (citing *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir.2002)); *see also Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016)

("Plaintiff need not allege § 1983 conspiracy claims with particularity […] although a plaintiff must set forth the parties, the purpose, and the approximate date of the alleged conspiracy.").

Plaintiff has met these requirements by alleging that on September 21, 2020 the Defendant Officers conspired to cause damage to Plaintiff by "using excessive force and/or failing to intervene in the use of excessive force against Plaintiff," "agreeing not to report each other after witnessing and/or using excessive force relative to Plaintiff" and "generating false documentation to cover-up for their own and each other's misconduct." Am. Compl. ¶¶ 64(a)-(c), ECF No. 50. As discussed above, Plaintiff alleged that these actions happened pursuant to the "statutes" and "customs" of the City of Chicago and violated his constitutional right to be free from excessive force. *Id.* ¶¶ 6, 8, 46, 49, 51, 64a-c, 66-77. Moreover, Defendant City of Chicago "admits" that the Defendant Officers "were at all times relevant acting under color of state law and the policies of the City of Chicago and the Chicago Police Department." Def. City of Chi.'s Answer to Pl.'s Am. Compl., Affirmative Def., and Jury Demand at 3, ECF No. 64 ("**Answer**"). Because Plaintiff alleged that City of Chicago's "statutes" and "customs" authorized Defendant Officers' conduct, Defendant City of Chicago is liable for its role in the conspiracy that violated Plaintiff's constitutional rights pursuant to § 1983.

The Court should deny Defendant City of Chicago's Motion to Dismiss Plaintiff's Count III and allow the Parties to proceed to discovery. *See Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 878 (N.D. Ill. 2014) (noting that Plaintiff "will have to provide significant evidentiary support for his *Monell* claim to survive summary judgment" and denying Defendant's motion to dismiss).

## II. The Court Should Deny Defendant City of Chicago's Motion to Dismiss Count V Because Plaintiff Has Adequately Alleged Defendant's *Respondeat Superior* Liability.

Plaintiff provides enough allegations concerning Defendant Officers' willful and wanton conduct to support his Count V against the City of Chicago for *respondeat superior* liability. In Illinois, an employer may be held liable for the actions of its employees that are "negligent, willful, malicious, or criminal . . . when . . . committed during the course of employment and in furtherance of the business of the employer." *See Bremen State Bank v. Hartford Acc. & Indem. Co.*, 427 F.2d 425, 428 (7th Cir. 1970); *see also Doe v. Clavijo*, 72 F. Supp. 3d 910, 913-14 (N.D. Ill. 2014) ("Respondeat superior liability 'extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed with the scope of employment.'" (quoting *Adames v. Sheahan*, 909 N.E.2d 742, 755 (2009))). Illinois has adopted § 228 of the Restatement (Second) of Agency, which states, in part,

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master […]

*Byrne v. City of Chicago*, 447 F. Supp. 3d 707, 714 (N.D. Ill. 2019) (quoting Restatement (Second) of Agency § 228 (1958)).

"Because scope of employment is a fact-intensive issue, Illinois courts have held that it is generally inappropriate to resolve this issue at the motion to dismiss or summary judgment stage." *Clavijo*, 72 F. Supp. 3d at 914. However, Dedendant City of Chicago has already admitted that the Defendant Officers' actions occurred within the scope of their employment. Answer at 2, ECF No. 64 ("Defendant admits that [Defendant Officers] were at all times relevant employed by the City of Chicago as Chicago police officers within the scope of their employment."), 3 ("Defendant admits that [Defendant Officers] were at all times relevant acting

under color of state law and the policies of the City of Chicago and the Chicago Police Department."). Thus, Defendant City of Chicago cannot dispute liability for the actions of its Defendant Officers as specified in the Amended Complaint which injured Plaintiff.

Although Illinois extends some immunity to public employees acting in the "execution or enforcement of any law," this protection does not cover any "act or omission [that] constitutes willful and wanton conduct." *See* 745 ILCS 10/2-202. Conduct may be considered "willful or wanton" if it "shows an utter indifference to or conscious disregard for the safety of others". *See* 745 ILCS 10/1-210.

Here, Plaintiff alleged that he was injured and distressed as a result of the actions of the Defendant Officers when restraining him during arrest. Am. Compl. ¶¶ 56, 57, ECF No. 50. Specifically, Plaintiff has alleged that he repeatedly complained to Defendant Officers regarding their "unnecessary and unreasonable use of force and restraints" against him, but that they failed to investigate his complaints or "consider the use of less harmful alternatives." *Id.* Plaintiff further alleges that because of Defendant Officers' actions, he suffered "exacerbation of pre-existing diabetes […], including a pressure ulcer on his right foot, as well as pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time." *Id.* Plaintiff's allegations that Defendant Officers ignored his complaints of his medical condition satisfies the standard of "utter indifference to or conscious disregard for the safety of others." *See* 745 ILCS 10/1-210; *see also*, *McWilliams v. Cook Cnty.*, No. 15 C 53, 2018 WL 3970145, at *8 (N.D. Ill. Aug. 20, 2018) (rejecting motion to dismiss where plaintiff detainee alleged that officers "acted willfully and wantonly" by disregarding plaintiff's

complaints that he was in pain and needed medical care after he fell in standing water, thereby causing him to sustain serious injuries).

Any argument that Defendant City of Chicago cannot be liable for Defendant Officers' negligent actions because Plaintiff did not include a count of negligence against the Defendant Officers is meritless, as it is not necessary to name a "primary defendant" to impose liability on an employer pursuant to *respondeat superior*. *See Walden v. City of Chicago*, 391 F. Supp. 2d 660, 680-81 (N.D. Ill. 2005); *see also McCottrell v. City of Chicago*, 481 N.E.2d 1058, 1060 (1985) ("Therefore it is sufficient for recovery against a public entity to prove that an identified employee would be liable even though that employee is not named a defendant in the action."). Instead, Plaintiff need only allege facts that the Defendant Officers "would be liable" to impose *respondeat superior* liability on Defendant City of Chicago. *See Walden*, 391 F. Supp. 2d at 681. Because Plaintiff has alleged enough facts that could support the imposition of individual liability against Defendant Officers, Defendant City of Chicago may be held liable pursuant to *respondeat superior*.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendant City of Chicago's 12(B)(6) Motion to Dismiss Counts III and V of Plaintiff's Complaint, ECF No. 64. In the alternative, Plaintiff respectfully requests leave to file an Amended Complaint in light of recruitment of new Plaintiff's counsel since Amended Complaint, ECF No. 50 was filed.

Dated: June 10, 2022					**KING & SPALDING LLP**

					  /s/*Amanda Sonneborn*  
					AMANDA SONNEBORN

					Amanda Sonneborn  
					110 N Wacker Drive  
					Suite 3800  
					Chicago, IL 60606  
					(312) 764-6940  
					asonneborn@kslaw.com


					Jalise Burt  
					1185 Avenue of the Americas  
					34th Floor  
					New York, NY 10036  
					(212) 556-2168  
					jburt@kslaw.com

					*Attorneys for Plaintiff Shedrick Bowes-Northern*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10 day of June, 2022, a true and correct copy of Plaintiff's Opposition to Defendant City of Chicago's 12(B)(6) Motion to Dismiss Counts III and V of Plaintiff's Complaint was served upon the following via ECF.

Maxwell Evan Lisy
Assistant Corporation Counsel
2 N. LaSalle St., Ste. 420
Chicago, Illinois 60602
(312) 742-0305
Maxwell.lisy@cityofchicago.org

Emily Rachel Bammel
Assistant Corporation Counsel
2 N. LaSalle St., Ste. 420
Chicago, Illinois 60602
(312) 744-3982
Emily.bammel3@cityofchicago.org

Dated: June 10, 2022 **KING & SPALDING LLP**

/s/Amanda Sonneborn
AMANDA SONNEBORN