# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHEDRICK BOWES-NORTHERN | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 cv 3351 |
| | ) | |
| v. | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| CITY OF CHICAGO, JOEL | ) | **FOURTH AMENDED COMPLAINT** |
| GORDILS, ZAUL QUIROZ, | ) | **JURY TRIAL DEMANDED** |
| ANATHEA SMITH, TRACY DREW, | ) | |
| KORY PIERCE, RONALD | ) | |
| CAVANAUGH, KEVIN HEYWOOD, | ) | |
| COOK COUNTY, THOMAS J. | ) | |
| DART, in his official capacity as Cook | ) | |
| County Sheriff, and UNKNOWN | ) | |
| COOK COUNTY DEPARTMENT OF | ) | |
| CORRECTIONS OFFICER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Shedrick Bowes-Northern files this Fourth Amended Complaint ("**FAC**") pursuant to 42 U.S.C. § 1983 to recover for the violation of Plaintiff's rights as secured by the United States Constitution and pursuant to Illinois state law against Defendants the City of Chicago, Chicago Police Officers Joel Gordils #8451, Zaul Quiroz #6331, Anathea Smith #19338, Tracy Drew #13167, Kory Pierce #12045, Ronald Cavanaugh #3274, and Kevin Heywood #19195 (together, "**Defendant Officers**"), Cook County, Thomas J. Dart, in his official capacity as Cook County Sheriff, and Unknown Cook County Department of Corrections Officer (together, "**Cook County Defendants**"). In support hereof, Plaintiff states the following:

**INTRODUCTION**

1.      On September 21, 2020, Defendant Officers unlawfully arrested Plaintiff without probable cause and used excessive force against him during this arrest and while processing him at the police station by handcuffing his wrists and ankles unreasonably tightly with metal cuffs, thereby cutting off his circulation.

2.      At all times Defendant Officers acted under the color of law pursuant to the Defendant City of Chicago's ("**City of Chicago**") policies, customs, or practices.

3.      Defendant Officers lacked probable cause for the arrest of Plaintiff. Defendant Officers informed Plaintiff that he was being arrested for allegedly pointing a gun at Mr. Smith, but Mr. Smith was not a reliable witness. Plaintiff had called 911 complaining that Mr. Smith had physically struck him and thus Mr. Smith was at risk of being arrested himself when Defendant Officers arrived on the scene at 11839 South State Street, Chicago. Thus, the credibility of Mr. Smith's allegations against Plaintiff was critically undermined.

4.      Further, Plaintiff complained several times to Defendant Officers that the metal restraints on his hands and ankles were too tight and exacerbated his diabetic symptoms.  As a result of the restraints being placed too tightly and the Defendant Officers' failure to loosen the restraints or otherwise respond to Plaintiff's complaints, Plaintiff suffered swelling and a pressure ulcer on his right foot, among other serious physical and emotional injuries.

5.      Defendant Officers did not, at any point, intervene to stop other Defendant Officers from arresting Plaintiff without probable cause or keeping unreasonably tight restraints on Plaintiff.

6.      Defendant Officers' unreasonable and outrageous actions violated Plaintiff's Fourth Amendment rights, and subjected Plaintiff to an assault, battery, and intentional infliction of emotional distress under state common law.

7.     Defendant Officers' conduct was authorized by Defendant City of Chicago, which has a policy, practice and/or custom of permitting the use of excessive force by restraints, including by its systemic failure to investigate excessive force claims in connection with restraints.

8.     Cook County Defendants also violated Plaintiff's Fourth Amendment Rights when they provided Plaintiff with inadequate medical care and placed Plaintiff in state-created danger of sexual assault by placing Plaintiff in a cell with a detainee who was known to masturbate in the presence of other detainees.

9.     Accordingly, Plaintiff now brings suit against Defendant Officers for violating his Fourth Amendment Rights against unreasonable seizure by using excessive force against him and failing to intervene in the excessive force used against him pursuant to 42 U.S.C. § 1983 and for intentional infliction of emotional distress, assault, and battery under Illinois common law.

10.     Plaintiff also brings a claim against Defendant City of Chicago pursuant to 42 U.S.C. § 1983 for its policies, practices, and customs that authorized Defendant Officers' conduct which violated Plaintiff's constitutional rights, and the Illinois Tort Immunity Act, 745 ILCS 10/9-102, which directs localities to pay tort judgments for compensatory damages and associated attorney's fees and costs where it or an employee acting within the scope of their employment is liable for a tort.

11.     Plaintiff also brings claims against Cook County; Thomas J. Dart, in his official capacity as Cook County Sheriff; and Unknown Cook County Department of Corrections officer pursuant to 42 U.S.C. § 1983 for failing to provide adequate care for Plaintiff's medical needs and for subjecting Plaintiff to state-created danger of sexual assault. Plaintiff also brings a claim under Illinois Tort Immunity Act, 745 ILCS 10/9-102 against Defendant Cook County.

12.     Plaintiff seeks declaratory relief, compensatory damages, punitive damages, attorney's

fees and costs, and punitive damages.

## PARTIES

13.     Plaintiff Shedrick Bowes-Northern is a resident of the State of Indiana and of the United States.

14.     Defendant City of Chicago is a municipal incorporation located within this judicial district under the laws of the State of Illinois and which employed Defendant Officers through the Chicago Police Department ("CPD"). Defendant City of Chicago is responsible for the policies, practices, and customs of the CPD.

15.     Upon information and belief, Defendant Officer Zaul Quiroz is a resident of the State of Illinois.  At all times relevant to this FAC, Defendant Officer Quiroz was employed by and acting on behalf of the Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge #6331 and beat 0566C.

16.     Upon information and belief, Defendant Officer Joel Gordils is a resident of the State of Illinois.  At all times relevant to this FAC, Defendant Officer Gordils was employed by and acting on behalf of the Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge #8451 and beat 0566A.

17.     Upon information and belief, Defendant Officer Anathea Smith is a resident of the State of Illinois.  At all times relevant to this FAC, Defendant Officer Smith was employed by and acting on behalf of the Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge #19338 and beat 0566C.  Defendant Officers Quiroz, Gordils, and Smith shall be known together as "**Beat 566 Defendant Officers**".

18.     Upon information and belief, Defendant Officer Tracy Drew is a resident of the State of Illinois.  At all times relevant to this FAC, Defendant Officer Drew was employed by and acting

on behalf of the Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge #13167 and beat 0511.

19.     Upon information and belief, Defendant Officer Kory Pierce is a resident of the State of Illinois.  At all times relevant to this FAC, Defendant Officer Pierce was employed by and acting on behalf of Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge #12045 and beat 0511. Defendant Officers Drew and Pierce shall be known together as "**Beat 511 Defendant Officers**".

20.     Upon information and belief, Defendant Officer Ronald Cavanaugh is a resident of the State of Illinois.  Upon information and belief, at all times relevant to this FAC, Defendant Officer Cavanaugh was employed by and acting on behalf of Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge number #3274 and beat 0571.

21.     Upon information and belief, Defendant  Officer Kevin Heywood is a resident of the State of Illinois.  Upon information and belief, at all times relevant to this FAC, Defendant Officer Heywood was employed by and acting on behalf of the Defendant City of Chicago and/or the CPD as a CPD Officer with assigned badge number #19195 and beat 0571. Defendant Officers Cavanaugh and Heywood shall be known together as "**Beat 571 Defendant Officers**".

22.     Defendant Cook County is a county under the laws of the State of Illinois. Cook County, through the Cook County's Sheriff's Office, runs the Cook County Department of Correction ("**CCDOC**"). Cook County is the employer of Unknown Cook County Department of Corrections Officer.

23.     Defendant Thomas J. Dart is the elected Sheriff of Cook County, Illinois.  At all times relevant to this FAC, Defendant Dart supervised the CCDOC, was the warden of the Cook County Jail, and had final policy making authority over jail operations.

24.     Upon information and belief, Defendant Unknown Cook County Department of Corrections Officer ("**Unknown CCDOC Officer**") is a resident of the State of Illinois.  Upon information and belief, at all times relevant to this FAC, Defendant Unknown CCDOC Officer was employed by and acting on behalf of the Cook County and/or the Cook County Department of Corrections as a Cook County Department of Corrections Officer. Cook County, Defendant Dart, and Defendant Unknown CCDOC Officer shall be known together as "**Cook County Defendants**."

25.     Each of the Defendant Officers, Defendant Dart, and the Unknown CCDOC Officer are sued in his or her individual capacity and at all times material to this FAC, acted under the color of state law, ordinance, and/or regulation, statutes, custom and usages of Defendant City of Chicago and/or CPD.

## JURISDICTION AND VENUE

26.     Plaintiff seeks redress for the deprivation of his rights secured by the United States Constitution.  This action is instituted pursuant to 42 U.S.C. § 1983 and seeks relief for Defendants' violations of Plaintiff's constitutional rights.  Therefore, this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and § 1343. This Court also has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

27.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Cook County, Illinois, which is located within this judicial district.

28.     Declaratory relief is authorized by 28 U.S.C. § 2201. A declaration of law is necessary to determine the rights and duties of the parties.

# FACTUAL ALLEGATIONS

I.  **Beat 511 Defendant Officers and 566 Defendant Officers Lacked Probable Cause for Plaintiff's Arrest.**

29.  On or about September 21, 2020, Plaintiff dropped off his daughter's kidney medication with his daughter's mother, Sydney Scott, while she was at Cheryl Spencer's house located at 11839 South State Street, Chicago.

30.  After dropping off the medication, Plaintiff was confronted, assaulted, and battered by Stephen Smith, an acquaintance of Sydney Scott.

31.  Specifically, Smith punched Plaintiff, which landed on Plaintiff's face.

32.  On September 21, 2020 and at all times material to this FAC, Plaintiff had an emergency order of protection against Stephen Smith, which was issued on 7/20/2020, as well as an Emergency Civil No Contact Order against Mr. Smith, which was issued on 7/20/2020 and effective until at least 10/9/2020.

33.  Plaintiff retreated to his vehicle and called 911.

34.  Plaintiff informed the dispatcher that he had been threatened, assaulted, and battered by Mr. Smith and that Plaintiff feared Mr. Smith's intentions and for Plaintiff's own safety.

35.  Plaintiff also informed the dispatcher that he had an Indiana License to Carry and that he had a firearm in his car.

36.  Plaintiff also explained that he wanted the responding CPD Officers to be aware that he had a firearm in his car.

37.  Plaintiff did not use or conceal a weapon in violation of Illinois law.

38.  At about this date and location, Beat 511 Defendant Officers responded to Plaintiff's call.

39.  Upon information and belief, Beat 511 Defendant Officers were aware of Plaintiff's conversation with the dispatcher at or before the time they arrived on scene.

40.     When Beat 511 Defendant Officers arrived, Plaintiff was outside of his vehicle.

41.     As Beat 511 Defendant Officers approached, Plaintiff informed them that he had a restraining order and order of protection against Mr. Smith.

42.     Defendant Officer Gordils first spoke briefly with Mr. Smith, then with Plaintiff to obtain Plaintiff's firearm.

43.      Plaintiff informed Defendant Officers that he was an Indiana resident, provided a copy of his driver's license, and provided a copy of his Indiana license to carry.

44.     Plaintiff attempted to show Defendant Officer Gordils an email he had on his phone showing the order of protection that he had against Mr. Smith and stated that he wanted Mr. Smith arrested, but Defendant Officer Gordils declined to view the order of protection at that time and instead went to speak to Mr. Smith.

45.     During the conversation with Mr. Smith, Defendant Officer Gordils encouraged Mr. Smith to press charges against Plaintiff, even after Mr. Smith advised Defendant Officer Gordils that he did not want to press charges against Plaintiff.

46.     After Defendant Officer Gordils spoke to Mr. Smith, Plaintiff informed Beat 511 Defendant Officers directly that Mr. Smith had physically struck him.

47.     Footage from Defendant Officer Gordil's body camera shows that he asked Plaintiff where Mr. Smith hit him, and, in response, Plaintiff pointed to his face and told him "he hit me in my face right here."

48.     Upon information and belief, Defendant Officer Gordils went back to speak with Mr. Smith and encourage him to press charges against Plaintiff.

49.     Upon information and belief, Mr. Smith eventually acceded to Defendant Officer Gordils's repeated suggestions and/or requests.

50.     Defendant Officer Gordils returned from speaking with Mr. Smith and rejoined the conversation taking place between Plaintiff and other Defendant Officers.  Defendant Officer Gordils shortly thereafter and abruptly placed Plaintiff under arrest, commenting on the Plaintiff's recording the interaction between them both directly before and directly after placing Plaintiff in metal handcuffs, with Defendant Officer Quiroz taking hold of Plaintiff's phone as Plaintiff was restrained.

51.     Defendant Officer Gordils placed handcuffs on Plaintiff, which were too tight, as shown by an image from Defendant Officer Gordil's body camera footage of the arrest:



52.     Throughout his encounters with the Defendant Officers at 11839 South State Street, Plaintiff did not resist, attack, or make verbal or physical threats to the Defendant Officers in any way.

53.     After Plaintiff was handcuffed, Beat 511 Defendant Officers arrived at 11839 South State Street, Chicago, Illinois.

54.     After Plaintiff was handcuffed by Defendant Officer Gordils, and after confirming with Mr. Smith directly that Plaintiff did in fact have an order of protection against Mr. Smith, both Defendant Officer Gordils and Defendant Officer Quiroz encouraged and then assisted Mr. Smith in drafting a criminal complaint.

55.     Despite confirming with Mr. Smith that Plaintiff had an order of protection against Mr.

Smith, Defendant Officer Gordils suggested that none existed by stating to Plaintiff "ran the name and nothing's coming back."

56.     Defendant Officer Pierce's body camera footage shows that once Mr. Smith signed the criminal complaint, Officer Gordils informed Plaintiff he was being arrested because Plaintiff was "walking outside pointing your gun at him", referring to Mr. Smith.

57.     Defendant Officer Pierce's body camera also captures him informing Plaintiff "If you pointed your weapon [at Mr. Smith] – I don't know if it's true or not, but according to the victim – that's why you're going to jail."

58.     At the time of Plaintiff's arrest, Beat 511 Defendant Officers and Beat 566 Defendant Officers knew that Plaintiff claimed to have an order of protection against Mr. Smith and that Plaintiff had called the police complaining that Mr. Smith had physically struck him and was seeking to have Mr. Smith arrested.

59.     Because Mr. Smith was at risk of being arrested for physically striking Plaintiff, his allegations against Plaintiff were inherently unreliable.

60.     Because Mr. Smith was not a reliable witness and Defendant Officers arrested Plaintiff based on Mr. Smith's statements, Defendant Officers lacked probable cause to arrest Plaintiff.

61.     Defendant Officers reached an agreement among themselves to arrest Plaintiff without probable cause in violation of the Fourth Amendment to the Constitution.

62.     Upon information and belief, in furtherance of their conspiracy, Defendant Officers agreed not to report each other after Plaintiff was arrested without probable cause.

63.     Upon information and belief, in furtherance of their conspiracy, Defendant Officers agreed with Mr. Smith to generate false documentation to cover-up for their own and each other's misconduct.

## II. Defendant Officers Used Excessive Force Against Plaintiff and Were Deliberately Indifferent to His Repeated Complaints About the Restraints Placed on Him and His Medical Condition

64.     Beat 511 Defendant Officers directed Plaintiff to sit in their vehicle.

65.     While in the vehicle, Plaintiff informed Beat 511 Defendant Officers that he could barely breathe, that he was a diabetic, that he was experiencing hot flashes, and as a result he was very scared.

66.     In response, Defendant Officer Drew directed Defendant Officer Pierce to roll the window down in the back of the vehicle.

67.     Beat 511 Defendant Officers did not check Plaintiff's condition, including not checking whether the restraints were unnecessarily tight.

68.     Instead, Beat 511 Defendant Officers proceeded to transport Plaintiff in the vehicle to the 5th District Station.

69.     During the car ride, when Plaintiff again complained that he could not breathe, Defendant Officer Drew responded "I know, we got the windows open man. That's why" and laughed. Again, neither of the Beat 511 Defendant Officers stopped to check Plaintiff's condition, including they did not check whether the restraints were unnecessarily tight.

70.     On the way to the police station, Plaintiff again informed Defendant Officers Pierce and Drew of his health concerns, specifically nothing that he was a diabetic and that his blood sugar and high blood pressure were affected.

71.     Upon arrival at the police station, and prior to his Miranda rights being read, Plaintiff informed Defendant Officer Gordils that his arms were hurting and the handcuffs were too tight.

72.     Defendant Officer Gordils replied "which arm?", to which Plaintiff responded by indicating the arm that was "messed up" and stating he was scared. Defendant Officer did not

sufficiently respond by checking Plaintiff's condition or whether the restraints were unnecessarily tight.

73.     Only after Defendant Officers brought Plaintiff to the police station and interrogated him and Plaintiff had complained several times about the restraints and his health did Defendant Officers arrange for Plaintiff's medical evaluation and treatment.

74.     In preparation for transporting Plaintiff to Trinity Hospital, Beat 571 Defendant Officers placed unreasonably tight, metal ankle restraints on Plaintiff.

75.     When Plaintiff complained that that the restraints were too tight, causing pain and discomfort in his wrists, arms, shoulders, and feet, including causing his feet to swell and that he was a diabetic, Beat 571 Defendant Officers responded in sum and substance "This is protocol. You can't go to the hospital unless you have these ankle cuffs on."

76.     Plaintiff specifically informed Beat 571 Defendant Officers that the metal ankle restraints were cutting off his circulation, to which they responded in sum and substance "you're a big guy, and we do not have bigger restraints."

77.     Defendant City of Chicago failed to provide Defendant Officers with and/or Defendant Officers failed to have on hand or use handcuffs or ankle cuffs of an appropriate and/or sufficient size while restraining Plaintiff at all times material to this FAC.

78.     Defendant Officers did not check Plaintiff's condition or loosen the restraints.

79.     At all times material to this FAC, Plaintiff fully cooperated with Defendant Officers, including answering their questions.

80.     Throughout his interactions with Defendant Officers, Plaintiff never resisted arrest or became physically aggressive. There was no objective reason to believe that he presented any risk of flight or threat of injury to the Defendant Officers or public safety.

81.     In total, Plaintiff was handcuffed for an unreasonable duration of approximately 4 hours,

from when Defendant Officer Gordils initially handcuffed Plaintiff on or about 6:06 p.m. at

11839 South State Street, Chicago, Illinois and throughout Defendant Officers transporting

Plaintiff to the police station, holding Plaintiff in a waiting area, interrogating Plaintiff,

transporting Plaintiff to and from the hospital for medical care, while Plaintiff received medical

care at Trinity Hospital, and at all other times material to this FAC.

82.     Plaintiff was also subjected to tight, metal ankle restraints for an unreasonable duration,

including throughout the approximately 3-hour period when Beat 571 Defendant Officers

transported him to and from Trinity Hospital and for the duration of the time spent at Trinity

Hospital.

83.     Despite being advised and aware of and personally observing Plaintiff's medical

condition and hearing his repeated complaints relating to Defendant Officers' unnecessary and

unreasonable use of force and restraints, Defendant Officers failed to take any action to

investigate Plaintiff's complaints or consider the use of less harmful alternatives. The duration

and/or effect of the restraints on Plaintiff was entirely unjustified and constituted an

unreasonable and excessive use of force in violation of the Fourth Amendment to the United

States Constitution.

84.     The failure by Defendant Officers to timely intervene and facilitate medical care delayed

Plaintiff's receipt of desperately-needed medical assistance, increasing the likelihood that

Plaintiff would suffer serious injury.

85.     Throughout Plaintiff's arrest, one or more Defendant Officers had a reasonable

opportunity to prevent excessive force from being used on Plaintiff, but they each failed to do so.

86.     At all times relevant to the Complaint, Defendant Officers were acting in the course of

their employment with the CPD and under the color of law of the United States of America and the State of Illinois.

87.     The acts described herein violated clearly established constitutional rights of the Plaintiff, were not objectively reasonable, were done under circumstances in which no reasonable officer would fail to realize that his or her conduct was a violation of plaintiff's rights, and were done without probable cause to believe the plaintiff posed a threat of serious harm.

88.     Defendant Officers reached an agreement among themselves to use excessive force and/or fail to intervene in the use of excessive force against Plaintiff in violation of the Fourth Amendment to the Constitution.

89.     Upon information and belief, in furtherance of their conspiracy, Defendant Officers agreed not to report each other after witnessing and/or using excessive force relative to Plaintiff.

90.     As a direct and proximate result of one or more of the aforesaid acts or omissions of Defendant Officers, Plaintiff was caused to suffer injuries, including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

91.     The loss of mobility resulting from the injury to Plaintiff's right foot includes limitations on Plaintiff's ability to carry, lift and grip objects, drive, rise onto toes to reach overhead, sleep more than four hours at a time, stand more than 15 minutes at a time, walk small distances, and walk on uneven surfaces.

### III. Defendant City of Chicago's Policy, Practices and Customs Authorized Defendant Officers' Actions and Omissions.

92. Although CPD's General Order G06-01-02 Restraining Arrestees provides an exception for handcuffing arrests or applying leg irons where it "would be an excessive measure of restraint" including with respect to the "arrestee's . . . physical health,"[1] the policy does not specify how CPD officers should make that determination.

93. On January 13, 2017, the United States Department of Justice issued a report ("DOJ Report") concluding that the CPD "engag[es] in a pattern or practice of using force in a manner that is constitutional" as a result of "deficiencies in CPD's training, supervision, accountability, and other systems".[2]

94. According to the DOJ Report, CPD Officers were not required to complete a "Tactical Response Report," which documents use of force during an incident, when they handcuff someone, including the techniques they used when handcuffing someone where it "do[es] not result in injury or an allegation of injury."[3]

95. The DOJ Report also noted that the Independent Police Review Authority and CPD's Bureau of Internal Affairs "fail to investigate certain claims of conduct that they cursorily determine are not 'serious' enough to warrant a full investigation" including "most complaints alleging excessive force in connection with handcuffing" despite the fact that "it is relatively easy for officers to gratuitously cause excruciating pain during the handcuffing process [. ]"[4]

96. Further, it is widely acknowledged that Defendant City of Chicago has a pervasive

---

[1] *General Order G06-01-02, Restraining Arrestees*, Chi. Police Dep't Directives System (2017), http://directives.chicagopolice.org/#directive/public/6802?f=restraint.
[2] U.S. Dep't of Just. C.R. Div. and U.S. Att'y's Off. N. Dist. Of Ill., *Investigation of the Chi. Police Dep't* 23 (2017).
[3] DOJ Report at 40, 42; Chic. Police Dep't, *CPD - 11.377 Tactical Response Report* (2020), http://directives.chicagopolice.org/forms/CPD-11.377.pdf
[4] DOJ Report at 52.

custom and practice of a "code of silence" whereby officers fail to report misconduct committed by other officers. In a 2015 speech to Chicago's City Council, Former City of Chicago Mayor Rahm Emanuel said "The problem is sometimes referred to as the thin blue line. The problem is other times referred to as the code of silence, and its tendency to ignore it. It is a tendency to deny it. It is a tendency in some cases to cover up the bad actions of colleagues."[5]

**IV.**  **Cook County Defendants Exacerbated Plaintiff's Medical Issues by Inadequately Addressing Plaintiff's Medical Needs.**

97.     On September 22, 2020, the day after Defendant Officers arrested Plaintiff, Plaintiff was transported to CCDOC.

98.     During processing by CCDOC's medical staff, Plaintiff informed medical staff that his feet were hurting him. The CCDOC medical staff member responded in sum and substance "don't come here with all that complaining" and did not evaluate his feet.

99.     Plaintiff complained that he required diabetic shoes as a medical accommodation for his diabetes, but Unknown CCDOC Officer dismissed his request and required him to wear regular shoes.

100.     Because Plaintiff did not have the proper shoes for his medical condition, the injuries he sustained from the metal cuffs around his ankles were exacerbated.

101.     Later when Plaintiff requested medical treatment for his foot pain, Unknown CCDOC Officer dismissed his request by informing him that the doctors were gone for the night and by suggesting he ask his fellow detainees for a pain pill.

102.     At all times relevant to the Complaint, Defendant Unknown CCDOC Officer was acting in the course of his employment with Cook County and under the color of law of the United

---

[5] Phil Rogers, *Officers Want Emanuel to Testify about Chic. Police 'Code of Silence'*, 5 Chicago (Dec. 15, 2015 9:01 PM), https://www.nbcchicago.com/news/local/emanuel-may-have-to-testify-about-chicago-police-code-of-silence/2001257/.

States of America and the State of Illinois.

103.    Cook County Defendants intentionally and maliciously failed to reasonably address Plaintiff's health issues and, as a result, Plaintiff suffered actual physical, emotional, and economic harm, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

**V.      Cook County Defendants Placed Plaintiff in State-Created Danger of Sexual Assault While Plaintiff Was in Their Custody.**

104.    When Plaintiff was sleeping, he woke up to a detainee masturbating and looking at him from his bunk.

105.    When one of the detainees told the masturbating detainee to stop what he was doing, the masturbating detainee smiled at Plaintiff and the other detainee, indicating that he knew and enjoyed that his actions were making them uncomfortable.

106.    Several detainees informed Plaintiff that the masturbating detainee was known for masturbating, and that this was indicated by the color of his uniform.

107.    The masturbating detainee's actions constituted sexual assault against Plaintiff.

108.    As a proximate result of the detainee's actions, Plaintiff was nervous and feared that he would be physically harmed.

109.    Upon information and belief, Cook County Defendants knew that the masturbating detainee engaged in unwelcome sexual behavior around other detainees.

110.    At all times during Plaintiff's detention as alleged herein, Cook County Defendants held a special relationship with Plaintiff and were custodians of Plaintiff and thereby had a duty to protect him from violence perpetuated by others who were in their custody and/or under their

control.

111.     Cook County Defendants failed to reasonably protect Plaintiff from sexual assault by the masturbating detainee in violation of Plaintiff's right to be free from state-created danger under the Fourth Amendment to the Constitution of the United States of America.

112.     As a direct and proximate result of one or more of the aforesaid acts or omissions of Cook County Defendants, Plaintiff was caused to suffer pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, and the deprivation of his constitutional rights and dignity.

### COUNT I
### False Arrest Claim Against All Defendant Officers Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution

113.     Plaintiff re-alleges paragraphs 1 through 112 as though fully set forth herein.

114.     The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

115.     It was clearly established at the time of Plaintiff's arrest that the Fourth Amendment prohibits law enforcement officers from arresting Plaintiff without probable cause.

116.     By arresting Plaintiff without probable cause, Defendant Officers violated Plaintiff's clearly established Fourth Amendment right to be free from excessive force in violation of the Fourth Amendment to the United States Constitution.

117.     Defendant Officers' arrest of Plaintiff without probable cause was objectively unreasonable because Defendant Officers' justification for Plaintiff's arrest were the allegations of Stephen Smith, an unreliable witness.

118.     In arresting Plaintiff without probable cause, Defendant Officers acted intentionally, willfully, recklessly, and/or with deliberate indifference.

119.    The aforementioned actions of Defendant Officers were the direct and proximate cause of the constitutional violations set forth above.

120.    Defendant Officers are not entitled to qualified immunity for their conduct, because their arrest of Plaintiff without probable cause violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

121.    As a proximate result of Defendant Officers' false arrest of Plaintiff, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

122.    WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

**COUNT II**
**Excessive Force Claim Against All Defendant Officers Pursuant to 42 U.S.C. § 1983**
**and the Fourth Amendment to the U.S. Constitution**

123.    Plaintiff re-alleges paragraphs 1 through 122 as though fully set forth herein.

124.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

125.    It was clearly established at the time of Plaintiff's arrest that the Fourth Amendment

prohibits law enforcement officers from using an unreasonable level of force during an arrest.

126. By using unreasonably tight restraints on Plaintiff, Defendant Officers violated Plaintiff's clearly established Fourth Amendment right to be free from excessive force in violation of the Fourth Amendment to the United States Constitution.

127. The level of force used by Defendant Officers against Plaintiff was objectively unreasonable because: (i) Plaintiff did not resist arrest, (ii) Plaintiff informed Defendant Officers that he was in pain several times, and (iii) Plaintiff informed Defendant Officers that his medical conditions were exacerbated by the restraints several times.

128. In restraining Plaintiff, Defendant Officers acted intentionally, willfully, recklessly, and/or with deliberate indifference.

129. The aforementioned actions of Defendant Officers were the direct and proximate cause of the constitutional violations set forth above.

130. Defendant Officers are not entitled to qualified immunity for their conduct, because their use of force against Plaintiff violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

131. As a proximate result of Defendant Officers' use of force against Plaintiff, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

132.    WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

### COUNT III
**Inadequate Medical Care Claim Against All Defendant Officers Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution**

133.    Plaintiff re-alleges paragraphs 1 through 132 as though fully set forth herein.

134.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

135.    It was clearly established at the time of Plaintiff's arrest that the Fourth Amendment requires law enforcement officers to respond reasonably to an arrestee's medical needs.

136.    By failing to timely facilitate medical care for Plaintiff, Defendant Officers violated Plaintiff's clearly established right to be free from unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

137.    The failure to timely facilitate medical care was objectively unreasonable because: (i) Plaintiff informed Defendant Officers that he was in pain several times, and (ii) Plaintiff informed Defendant Officers that his medical conditions were exacerbated by the restraints several times.

138.    By failing to timely facilitate medical care, Defendant Officers acted intentionally, willfully, recklessly, and/or with deliberate indifference.

139.    The aforementioned actions of Defendant Officers were the direct and proximate cause of

the constitutional violations set forth above.

140.    Defendant Officers are not entitled to qualified immunity for their conduct, because their failure to reasonably respond to Plaintiff's medical needs violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

141.    As a proximate result of Defendant Officers' failure to reasonably respond to Plaintiff's medical needs, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

142.    WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

## COUNT IV
### Failure to Intervene (in False Arrest, Excessive Force, and Inadequate Medical Care) Claim Against All Defendant Officers Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution

143.    Plaintiff re-alleges paragraphs 1 through 142 as though fully set forth herein.

144.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

145.    It was clearly established at the time of Plaintiff's arrest that the Fourth Amendment

prohibits law enforcement officers from making false arrests, using an unreasonable level of force during an arrest, or failing to reasonably respond to an arrestee's medical needs.

146.     Any reasonable law enforcement officer would have intervened in the above-described false arrest, excessive force, and/or failure to reasonably respond to an arrestee's medical needs.

147.     Each of the Defendant Officers personally observed that Plaintiff's arrest was not supported by probable cause, that Plaintiff's restraints were too tight, and that other Defendant Officers were not reasonably responding to Plaintiff's medical needs.

148.     Despite this knowledge, Defendant Officers acted with deliberate indifference by failing to take reasonable measures in the face of this substantial risk of harm.

149.     Defendant Officers' failure to intervene in the actions of other Defendant Officers constituted unreasonable or unjustifiable seizure or force against Plaintiff.

150.     By failing to intervene in the other Defendant Officers' violations of Plaintiff's constitutional rights, Defendant Officers acted intentionally, willfully, recklessly, and/or with deliberate indifference.

151.     The aforementioned actions of Defendant Officers were the direct and proximate cause of the constitutional violations set forth above.

152.     Defendant Officers are not entitled to qualified immunity for their conduct, because their failure to intervene violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

153.     As a proximate result of Defendant Officers' failure to intervene, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional

trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

154.    WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

### COUNT V
**Conspiracy to Deprive Plaintiff of His Constitutional Rights Against Defendant Officers Pursuant to 42 U.S.C. § 1983**

155.    Plaintiff re-alleges paragraphs 1 through 154 as though fully set forth herein. The aforementioned actions of Defendant Officers were the direct and proximate cause of the violations of the United States Constitution and *inter alia*, the Fourth Amendment.

156.    In the manner described more fully above, on September 21, 2020 Defendant Officers reached an agreement among themselves (i) to falsely arrest Plaintiff and/or fail to intervene in the false arrest of Plaintiff and/or (ii) to use excessive force and/or fail to intervene in the use of excessive force against Plaintiff, thereby depriving Plaintiff of his Fourth Amendment constitutional right.

157.    Upon information and belief, Defendant Officers agreed to not report each other after (i) witnessing the false arrest of Plaintiff and/or (ii) witnessing and/or using excessive force relative to Plaintiff.

158.    Defendant Officers agreed with Mr. Smith to generate false documentation to cover-up for their own and each other's misconduct.

159.     In furtherance of their conspiracy, Defendant Officers committed overt acts and were otherwise willful participants in joint activity.

160.     As a result of Defendants Officers' misconduct described in this Count, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

161.     WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

### COUNT VI
**_Monell_ Claim Against Defendant City of Chicago Pursuant to 42 U.S.C. § 1983**

162.     Plaintiff re-alleges paragraphs 1 through 161 as though fully set forth herein.

163.     This count arises pursuant to _Monell v. New York City Department of Social Services_, 436 U.S. 658, 690-95 (1978), which established a basis for municipal liability pursuant to 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents . . . . when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

164.     The misconduct of Defendant Officers alleged above in Counts I to IV was undertaken pursuant to the policy and practice of Defendant City of Chicago. Defendant City of Chicago is

liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of Defendant City of Chicago, as well as by the actions of policy-making officials for Defendant City of Chicago.

165. Upon information and belief, Defendant City of Chicago has maintained policies, practices and/or customs permitting the constitutional violations described in Counts I through IV, including by either failing to properly:

    i. train, supervise, and control its officers, including with respect to the use of restraints on arrestees and addressing the medical needs of arrestees;

    ii. punish and discipline prior instances of similar misconduct;

    iii. investigate prior complaints of excessive force involving the use of restraints on arrestees, inadequate medical care of arrestees, and/or false arrest by their agents and/or employees; or

    iv. remedy patterns of abuse despite actual knowledge of the same.

    Or by improperly

    v. encouraging and/or acquiescing to the filing of false criminal charges, unreasonable restraint of arrestees, and/or inadequate medical care of arrestees; or

    vi. maintaining, encouraging and/or acquiescing to an unofficial "code of silence" within the CPD, by which officers fail to report misconduct by other officers.

166. Defendant City of Chicago failed to provide Defendant Officers with appropriately and sufficiently sized handcuffs or ankle cuffs to use in the course of their employment with the CPD.

167. The aforementioned policies, practices and/or customs of the City of Chicago, and the resulting use of excessive and unnecessary force, were the direct and proximate cause of the

violations of Plaintiff's constitutional rights, and actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

168.    WHEREFORE, Plaintiff demands compensatory damages from Defendant City of Chicago, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant City of Chicago under 42 U.S.C. § 1983 because Defendant City of Chicago's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

**COUNT VII**
**Assault Pursuant to Illinois Common Law**

169.    Plaintiff re-alleges paragraphs 1 through 168 as though fully set forth herein.

170.    The conduct and actions described above of Defendant Officers, acting within the scope of their employment as police officers, were intentional acts and created a reasonable apprehension of imminent harm.

171.    The misconduct alleged above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

172.    As a direct and proximate result of Defendant Officers' extreme and outrageous conduct, Plaintiff had a reasonable apprehension of imminent harm.

173.    Plaintiff suffered actual physical, emotional, and economic harm including a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation,

embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

174.     Defendant Officers undertook the misconduct described in this Count within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

175.     WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for compensatory damages, punitive damages, attorney's fees and costs, and such other additional relief, as this Court deems equitable and just.

## COUNT VIII
## Battery Pursuant to Illinois Common Law

176.     Plaintiff re-alleges paragraphs 1 through 175 as though fully set forth herein.

177.     The conduct and actions described above of Defendant Officers, acting within the scope of their employment as police officers, were intentional acts and constituted unjustified and offensive physical contact.

178.     The misconduct alleged above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

179.     As a direct and proximate result of Defendant Officers' extreme and outrageous conduct, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, and pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

180.     Defendant Officers undertook the misconduct described in this Count within the scope of

their employment such that their employer, the City of Chicago, is liable for their actions.

181.    WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for compensatory damages, punitive damages, attorney's fees and costs, and such other additional relief, as this Court deems equitable and just.

**COUNT IX**
**Intentional Infliction of Emotional Distress Against Defendant Officers Pursuant to Illinois State Law**

182.    Plaintiff re-alleges paragraphs 1 through 181 as though fully set forth herein.

183.    The conduct and actions described above of Defendant Officers, acting within the scope of their employment as police officers, were intentional acts and were extreme and outrageous, and conducted willfully and wantonly, and/or knowing there was a high probability that their conduct would cause Plaintiff severe emotional distress.

184.    As a direct and proximate result of Defendant Officers' extreme and outrageous conduct, Plaintiff experienced severe emotional distress constituting intentional infliction of emotional distress under the laws of the State of Illinois.

185.    Defendant Officers undertook the misconduct described in this Count within the scope of their employment such that their employer, the Defendant City of Chicago, is liable for their actions.

186.    WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for compensatory damages, punitive damages, attorney's fees and costs, and such other additional relief, as this Court deems equitable and just.

**COUNT X**
**Illinois Common Law Claim for *Respondeat Superior* Against Defendant City of Chicago**

187.    Plaintiff re-alleges paragraphs 1 through 186 as though fully set forth herein.

188.    Defendants Officers involved in the assault, battery, and intentional infliction of emotional distress against Plaintiff described herein were acting within the scope of their employment and as agents of their employer, the Defendant City of Chicago.

189.    Defendant City of Chicago is liable for the actions of its agents and employees under the doctrine of *respondeat superior*, and is therefore liable for Defendant Officers' assault, battery, and intentional infliction of emotional distress, and any other state law claims that arise out of the occurrences that are the subject of this FAC.

190.    As the direct and proximate cause of the unlawful acts of Defendant Officers which occurred within the scope of their employment activities, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

191.    WHEREFORE, should Defendant Officers be found liable for any claims alleged herein, Plaintiff demands judgment against Defendant City of Chicago for compensatory damages, punitive damages, attorney's fees and costs, and such other additional relief, as this Court deems equitable and just.

## COUNT XI
### Illinois Tort Immunity Act - 745 ILCS 10/9-102 - Against Defendant City of Chicago

192.    Plaintiff re-alleges paragraphs 1 through 191 as though fully set forth herein.

193.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102 municipalities in Illinois are directed to pay for any tort judgment for compensatory damages and associated attorney's fees and costs for which it or an employee acting within the scope of his employment is liable

within the scope of their employment activities.

194.    At all times relevant hereto, Defendant City of Chicago employed Defendant Officers either directly and/or through its agent the CPD.

195.    Defendant Officers committed the acts alleged above under color of law, while on duty as CPD officers, and in the scope of employment of Defendant City of Chicago.

196.    The actions described in this FAC were objectively unreasonable and were undertaken willfully and wantonly with reckless disregard for the rights and safety of Plaintiff.

197.    As a direct and proximate cause of Defendant Officers' unlawful acts, which occurred within the scope of their employment activities, Plaintiff was suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

198.    As such, Defendant City of Chicago is liable to Plaintiff for any award of compensatory damages, attorney's fees, and costs that arise from the actions of Defendant Officers.

199.    WHEREFORE, should Defendant Officers be found liable for any of the alleged counts in this cause, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, Defendant City of Chicago pay Plaintiff any judgment obtained against Defendant Officers as a result of this FAC.

## COUNT XII
### Inadequate Medical Care Claim Against Cook County Defendants Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution

200.    Plaintiff re-alleges paragraphs 1 through 199 as though fully set forth herein.

201.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable

seizure by law enforcement officials.

202.    It was clearly established at the time of Plaintiff's detention that the Fourth Amendment requires state custodians to respond reasonably to a detainee's medical needs.

203.    By failing to facilitate medical care for Plaintiff's foot, Cook County Defendants violated Plaintiff's clearly established right to be free from unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

204.    The failure to facilitate medical care was objectively unreasonable because Plaintiff informed Cook County Defendants that he was in pain several times.

205.    By failing to facilitate medical care, Cook County Defendants acted intentionally, willfully, recklessly, and/or with deliberate indifference.

206.    Defendant Dart in his Official Capacity, participated in a widespread practice of denying detainees adequate medical care that constituted a custom or usage with the force of law.

207.    Defendant Dart in his Official Capacity, failed to adequately train corrections officers and other personnel on how to identify detainees with serious medical conditions and provide adequate medical treatment.

208.    The aforementioned actions of Cook County Defendants were the direct and proximate cause of the constitutional violations set forth above.

209.    Defendant Dart and Defendant Unknown CCDOC Officer are not entitled to qualified immunity for their conduct, because their failure to reasonably respond to Plaintiff's medical needs violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

210.    As a proximate result of Defendant Officers' failure to reasonably respond to Plaintiff's medical needs, Plaintiff suffered actual physical, emotional, and economic harm including

exacerbation of pre-existing diabetes, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

211.    WHEREFORE, Plaintiff demands compensatory damages from Cook County Defendants, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Cook County Defendants under 42 U.S.C. § 1983 because Cook County Defendant's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

### COUNT XIII
### State-Created Danger Claim Against Cook County Defendants Pursuant to 42 U.S.C. § 1983 and Substantive Due Process Under the Fourteenth Amendment

212.    Plaintiff re-alleges paragraphs 1 through 211 as though fully set forth herein.

213.    The Fourteenth Amendment of the U.S. Constitution protects citizens against deprivation of due process of law, including substantive due process of law.

214.    It was clearly established at the time of Plaintiff's detention that substantive due process pursuant to the Fourteenth Amendment requires state custodians to protect a person from another person's private acts of violence where the state itself created the danger and/or where there exists a special custodial relationship between the person and the state.

215.    Cook County Defendants were the custodians of Plaintiff at all times while Plaintiff was detained at CCDOC.

216.    Cook County Defendants created a danger of sexual assault to Plaintiff.

217.    Upon information and belief, Cook County Defendants knew that the masturbating

detainee engaged in unwelcome sexual behavior around other detainees.

218. By placing Plaintiff in close proximity to the masturbating detainee, as alleged above, Cook County Defendants failed to protect Plaintiff.

219. The Cook County Defendants acted intentionally, willfully, recklessly, and/or with deliberate indifference when they placed, or allowed to be placed, and/or instituted a widespread policy, custom, and/or practice that allowed to be placed Plaintiff in close proximity to the masturbating detainee.

220. Defendant Dart in his Official Capacity, participated in a widespread practice of failing to protect detainees in the state's care from the harmful actions of others that constituted a custom or usage with the force of law.

221. Defendant Dart in his Official Capacity, failed to adequately train corrections officers and other personnel on how to protect detainees in the state's care from the harmful actions of others.

222. As the proximate cause of the Cook County Defendants' failure to protect Plaintiff by placing Plaintiff in close proximity to the masturbating detainee, Plaintiff was sexually assaulted.

223. Cook County Defendants' failure to protect Plaintiff, as his custodian, from sexual assault from the masturbating detainee shocks the conscience.

224. Cook County Defendants acted intentionally, willfully, recklessly, and/or with deliberate indifference.

225. Defendant Dart and Defendant Unknown CCDOC Officer are not entitled to qualified immunity for their conduct, because their failure to protect Plaintiff from sexual assault violated Plaintiff's clearly established constitutional rights and was objectively unreasonable.

226. As a proximate result of Defendant Officers' failure to reasonably respond to Plaintiff's medical needs, Plaintiff experienced pain and suffering, humiliation, embarrassment, fear,

emotional trauma, emotional distress, mental anguish, and the deprivation of his constitutional rights and dignity.

227.     WHEREFORE, Plaintiff demands compensatory damages from Cook County Defendants, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Cook County Defendants under 42 U.S.C. § 1983 because Cook County Defendant's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

### COUNT XIV
### *Monell* Claim Against Defendant Cook County Pursuant to 42 U.S.C. § 1983

228.     Plaintiff re-alleges paragraphs 1 through 227 as though fully set forth herein.

229.     This count arises pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-95 (1978), which established a basis for municipal liability pursuant to 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents . . . . when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

230.     The misconduct of Cook County Defendants alleged above in Counts XII and XIII was undertaken pursuant to the policy and practice of Defendant Cook County. Defendant Cook County is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of Defendant Cook County, as well as by the actions of policy-making officials for Defendant Cook County.

231.     Upon information and belief, Defendant Cook County has maintained policies, practices and/or customs permitting the constitutional violations described in Counts XII through XIII, including by either failing to properly:

i.     train, supervise, and control its correction officers and employees, including with respect to addressing the medical needs of detainees and protecting detainees from sexual assault;

ii.     punish and discipline prior instances of similar misconduct;

iii.     investigate prior complaints of inadequate medical care and subjecting detainees to risk of harm by their agents and/or employees; or

iv.     remedy patterns of abuse despite actual knowledge of the same.

    Or by improperly

v.     encouraging and/or acquiescing to the failure of its agents and/or employees to protect detainees and/or failure to reasonably address detainees' medical needs; or

vi.     maintaining, encouraging and/or acquiescing to an unofficial "code of silence" within CCDOC, by which corrections officers fail to report misconduct by other corrections officers.

232.     CCDOC has a long history of activities that shock the conscience which have drawn the attention of both independent and government agencies. It has been continuously monitored by the independent John Howard Association of Illinois for the conditions in which its inmate populations are held, the U.S. Department of Justice Civil Rights Division on July 11, 2008 issued a 98-page report following a 17-month investigation of Cook County Jail that revealed the poor supervision of inmates, among other disturbing findings, and in 2010-2011 actions were brought in this Court, including by the Department of Justice, which alleged conditions in CCDOC county jails violated the Eighth and Fourteenth Amendments.

233.     Defendant Dart was and is, at all times relevant to this FAC, in complete control of and responsible for the inmates of CCDOC, which is maintained, operated, and overseen by

Defendant Cook County.

234. Defendant Dart in his Official Capacity, participated in a widespread practice of failing to protect detainees in the state's care from the harmful actions of others that constituted a custom or usage with the force of law.

235. Defendant Dart in his Official Capacity, failed to train corrections officers and other personnel on how to protect detainees in the state's care from the harmful actions of others.

236. The actions taken by Defendant Cook County in this FAC were objectively unreasonable, shock the conscience, and were undertaken willfully and wantonly with reckless disregard for the rights and safety of Plaintiff.

237. The aforementioned policies, practices and/or customs of Defendant Cook County, and the resulting use of excessive and unnecessary force, were the direct and proximate cause of the violations of Plaintiff's constitutional rights, and actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff repeatedly disclosed to Defendant Officers, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

238. WHEREFORE, Plaintiff demands compensatory damages from Defendant Cook County, and whatever additional relief this Court deems equitable and just. Plaintiff is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law. Plaintiff is also entitled to punitive damages against Defendant Cook County under 42 U.S.C. § 1983 because Defendant Cook County's actions were malicious, willful, or with reckless or wanton disregard of Plaintiff's constitutional rights.

## COUNT XV
## Willful and Wanton Conduct - Illinois Common Law

239.    Plaintiff re-alleges paragraphs 1 through 238 as though fully set forth herein.

240.    As described more fully above, the actions of Cook County Defendants breached the duty of care owed to Plaintiff as a detainee in their care by failing to protect Plaintiff from Sexual Assault to prevent this assault.

241.    The actions of Cook County Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of Plaintiff. Cook County Defendants were conscious that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

242.    As a direct and proximate result of Cook County Defendants' willful and wanton conduct, Plaintiff experienced pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, and the deprivation of his constitutional rights and dignity.

## COUNT XVI
## Illinois Common Law Claim for *Respondeat Superior* Against Defendant Cook County

243.    Plaintiff re-alleges paragraphs 1 through 242 as though fully set forth herein.

244.    Defendant Dart and Defendant Unknown CCDOC Officer involved in the willful and wanton conduct against Plaintiff described herein were acting within the scope of their employment and as agents of their employer, the Defendant Cook County.

245.    Defendant Cook County is liable for the actions of its agents and employees under the doctrine of *respondeat superior*, and is therefore liable for Defendant Dart and Defendant Unknown CCDOC Officer's willful and wanton conduct, and any other state law claims that arise out of the occurrences that are the subject of this FAC.

246.    As the direct and proximate cause of the unlawful acts of Defendant Dart and Defendant Unknown CCDOC Officer which occurred within the scope of their employment activities, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff disclosed to Cook County Defendants, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

247.    WHEREFORE, should Defendant Dart and Defendant Unknown CCDOC Officer be found liable for any claims alleged herein, Plaintiff demands judgment against Defendant Cook County for compensatory damages, punitive damages, attorney's fees and costs, and such other additional relief, as this Court deems equitable and just.

### COUNT XVII
### Illinois Tort Immunity Act - 745 ILCS 10/9-102 - Against Defendant Cook County

248.    Plaintiff re-alleges paragraphs 1 through 247 as though fully set forth herein.

249.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102 municipalities in Illinois are directed to pay for any tort judgment for compensatory damages and associated attorney's fees and costs for which it or an employee acting within the scope of his employment is liable within the scope of their employment activities.

250.    At all times relevant hereto, Defendant Cook County employed Defendant Dart and Defendant Unknown CCDOC Officer either directly and/or through its agent the CCDOC.

251.    Defendant Dart and Defendant Unknown CCDOC Officer committed the acts alleged above under color of law, while on duty in their respective roles, and in the scope of employment of Defendant Cook County.

252.     The actions described in this FAC were objectively unreasonable and were undertaken willfully and wantonly with reckless disregard for the rights and safety of Plaintiff.

253.     As a direct and proximate cause of Defendant Dart and Defendant Unknown CCDOC Officer's unlawful acts, which occurred within the scope of their employment activities, Plaintiff suffered actual physical, emotional, and economic harm including exacerbation of pre-existing diabetes that Plaintiff disclosed to CCDOC staff and Unknown CCDOC Officer, a pressure ulcer on Plaintiff's right foot resulting in loss of mobility, pain and suffering, humiliation, embarrassment, fear, emotional trauma, emotional distress, mental anguish, disfigurement, the deprivation of his constitutional rights and dignity, interference with a normal life, and lost time, including with his children.

254.     As such, Defendant Cook County is liable to Plaintiff for any award of compensatory damages, attorney's fees, and costs that arise from the actions of Defendant Dart and Defendant Unknown CCDOC Officer.

255.     WHEREFORE, should Defendant Dart and Defendant Unknown CCDOC Officer be found liable for any of the alleged counts in this cause, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, Defendant Cook County pay Plaintiff any judgment obtained against Defendant Dart and Defendant Unknown CCDOC Officer as a result of this FAC.

**JURY DEMAND**

256.     Plaintiff demands trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each of the Defendants, and award the following relief:

    a.   declaration that Defendants' conduct violated the Fourth Amendment of the United States

Constitution;

b. compensatory damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law against Defendants, jointly and severally, in an amount to be determined at trial;

c. compensatory damages for economic losses on all claims allowed by law against Defendants, jointly and severally, in an amount to be determined at trial;

d. punitive damages on all claims allowed by law against Defendants, jointly and severally;

e. attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law;

f. pre- and post-judgment interest at the lawful rate; and

g. any other relief the Court deems just and equitable.

Dated: September 23, 2022         **KING & SPALDING LLP**

                      */s/Amanda Sonneborn*
                AMANDA SONNEBORN

                Amanda Sonneborn
                110 N Wacker Drive
                Suite 3800
                Chicago, IL 60606
                (312) 764-6940
                asonneborn@kslaw.com

                Andrew Cockroft
                110 N Wacker Drive
                Suite 3800
                Chicago, IL 60606
                (312) 764-69172168
                acockroft@kslaw.com
                *Attorneys for Plaintiff Shedrick Bowes-Northern*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2022, a true and correct copy of

Plaintiff's Fourth Amended Complaint was served upon all parties of record via ECF.


Dated: September 23, 2022              **KING & SPALDING LLP**

                                    _/s/Andrew Cockroft_
                              Andrew Cockroft